UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY KITTILSEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-00931-E |
| | § | |
| GENERAL SUPPLY & SERVICES, INC. | § | |
| d/b/a GEXPRO, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment (Doc. No. 23) filed by defendant General Supply & Services, Inc. d/b/a Gexpro (Gexpro) in this employment discrimination action brought by its former employee plaintiff Gary Kittilsen.  Having considered the motion, the parties' briefing, and applicable law, the Court determines the motion should be GRANTED.

### BACKGROUND

In June 2015, Kittilsen was hired by Gexpro, a distributor and supply-chain solutions provider to manufacturers of gaskets, seals, fasteners, nuts, bolts and other parts in support of the manufacturers' production lines and critical supply chain activities (Doc. 26, p. 9; Doc. 31-2, p.1). Kittilsen served as program manager for the General Dynamics domestic account in Gexpro's Dallas branch office (Doc. 26, pp. 9, 11).  His specific job duties included managing vendor relationships, ensuring parts were ordered and delivered on time, driving process improvements, purchasing, forecasting, attending to customer services, and providing technical and product knowledge support to suppliers and customers (*Id*., pp. 11-12; Doc. 29-2, pp. 2-4).

1

Kittilsen received a "below expectations" rating on his 2015 performance review, which noted data input inaccuracies, a large number of backorders, and lack of industry knowledge (Doc. 29-2, pp. 5-12).  The review also referred to a September 2015 "verbal altercation" between Kittilsen and  a supplier that disrupted the office (*Id*.).  In February 2016, Gexpro placed Kittilsen on a Performance Improvement Plan (First PIP) aimed at (1) reducing red sheet rejections/order entry errors and backlog, (2) improving response time to customers, and (3) increasing fastener knowledge (Doc. 26, pp. 16-17; Doc. 30, p. 1).

In mid-March 2016, Kittilsen suffered a seizure at home, followed by two seizures at work the next day (Doc. 26, p. 18).  He experienced blurred vision, a spinning feeling and shortness of breath during each episode (*Id*.).  The episodes were diagnosed as "panic attacks" initially, but Kittilsen subsequently was diagnosed with a seizure disorder (*Id*., p. 19; Doc. 30, pp. 2-10).

Kittilsen continued to have seizures (Doc. 26, p. 19; Doc. 30, pp. 2-7).  After an April 2016 seizure resulted in a concussion,  Dr. Mark Adams, a neurologist, examined Kittilsen and requested that Kittilsen be off work from April 27, 2016 through May 2, 2016 (Doc. 26, pp. 19-20; Doc. 30, pp. 2-7).

On May 12, 2016, Adams completed a certification for Kittilsen to take leave under the Family and Medical Leave Act (FMLA) (Doc. 30, pp. 8-10).  According to the certification, Kittilsen was unable to perform, and would need to avoid, computer keyboard and screen use, complex mental tasks, multi-tasking, planning and executive decision making (*Id*.).  Adams requested that Kittilsen have a reduced work schedule through May 25, 2016 (*Id*.).  Gexpro worked with Kittilsen, allowing him to work around his medical appointments or from home on occasion (Doc. 26, p. 20).

2

In May and June 2016, Kittilsen had numerous seizures at work, including one that resulted in him hitting his head (Doc. 26, pp. 20-21; Doc. 31-1, p. 1). Gexpro asked Kittilsen to provide information from his healthcare provider regarding his ability to perform the essential functions of his job and to do so safely (Doc. 31-1, p. 1). Kittilsen was on medical leave from June 15, 2016 to July 5, 2016, when Adams wrote that Kittilsen could return to work without restrictions (Doc. 30, p. 11; Doc. 31-1, p. 1).

On August 3, 2016, General Dynamics experienced a "production line down" for several days at one of its manufacturing facilities after a necessary part was not delivered on time (Doc. 26, pp. 21-22; Doc. 31, p. 1). General Dynamics demanded Gexpro submit a "Corrective Action" (Doc. 31, p. 1). According to Eric Schulze, Gexpro's Dallas branch manager, Kittilsen had not completed follow up with the part supplier, causing the delay that resulted in the line down (Doc. 30, p. 12; Doc. 31, p.1). Kittilsen, however, attributed the service failure to Gexpro because he "hand[ed] it over" to a supervisor while he was out of work with his seizures (Doc. 26, p. 22).

Kittilsen experienced another series of seizures at work from August 8, 2016 through August 15, 2016 (Doc. 27, p. 1). Because of the frequency of the seizures, Gexpro approved a medical leave of absence and again requested that Kittilsen seek an opinion from his doctor as to whether he could perform his work safely (Doc. 31-1, p. 2). In a September 1, 2016 letter, Adams wrote that Kittilsen's last documented seizure was August 30, 2016, but released him to work without limitations and/or restrictions as of September 5, 2016 (Doc. 30-1, p. 1). Kittilsen, however, continued to have seizures and did not return to work (Doc. 27, p. 2). On September 21, 2016, Adams released Kittilsen to work on September 28, 2016 (Doc 30-1, p. 2). On September 28, 2016, however, Adams wrote that he had instructed Kittilsen not to work until a new October 3, 2016 release date. (Doc. 30-1, p. 3) And, on September 29, 2016, Adams wrote again, noting

Kittilsen's seizure disorder had been difficult to fully control (Doc. 30-1, pp. 4-5).  Adams advised that Kittilsen had been instructed not to drive and he should remain seizure free for two to three weeks before returning to the usual stresses of the workplace (*Id.*). On October 20, 2016, Adams wrote that Kittilsen was released to work on October 24, 2016 (Doc. 30-1, p. 6).  Kittilsen's only restrictions were that he not drive or work above ground or on ladders (*Id.*).

A few days after Kittilsen returned to work, Gexpro gave Kittilsen a Second Performance Improvement Plan (the Second PIP), which Gexpro determined was warranted after assessing Kittilsen's management of the General Dynamics account[1] (Doc. 27, p. 3; Doc. 30-1, pp. 7-8; Doc. 31, pp. 1-2).  Later that day, Kittilsen collapsed at work from another seizure (Doc. 31-1, p. 2).  He was on medical leave for three days, returning to work on October 31, 2016, when he suffered additional seizures (Doc. 31-1, p. 2).  Gexpro again requested that Kittilsen obtain medical approval before returning to work (Doc 31-1, p. 2).  On November 9, 2016, Adams recommended that Kittilsen be evaluated by an epilepsy clinic and restricted Kittilsen from driving and working above ground, on ladders, or in the warehouse (Doc. 30-1, p. 10).  A few days later, Adams wrote again, adding that Kittilsen should not return to work at all until after his evaluation at the epilepsy clinic (Doc. 30-1, p. 11).

On November 28, 2016, Dr. Ryan Hays evaluated Kittilsen at the epilepsy clinic (Doc. 30-1, p. 12).  Hays advised that Kittilsen should be able to return to work by December 12, 2016 (*Id.*).  Kittilsen requested that Hays extend his return date to later in December, and, ultimately, was released and returned to work in January 2017 (Doc. 30-1, p.13).  Gexpro approved all of Kittilsen's medical leave while he was off work (Doc. 27, p.  6).

---

[1]  Gexpro proffered evidence that it decided to place Kittilsen on the Second PIP in August 2016, but did not present it to him until he returned from medical leave (Doc. 31, pp. 1-2).  There also was some evidence that Gexpro drafted the Second PIP on August 12, 2016 (Doc. 31, p. 2; Doc. 31-1, pp. 1, 4-5), but it is dated September 12, 2016 and refers to backlogs as of September 6, 2016, and backorders as of September 16, 2016 (Doc. 30-1, pp. 7-8).

Meanwhile, Gexpro determined it needed to fill the General Dynamics program manager position because Kittilsen's "need for leave was unpredictable and had become indefinite by late 2016" (Doc. 31, p. 2; Doc. 31-1, p. 2).  Instead of terminating Kittilsen, Gexpro offered him an inside sales position with the same salary (Doc. 31-1, p. 2).

On January 15, 2017, the eve of his return to work, Kittilsen sent an email to McConnell raising concerns about disability discrimination (Doc. 30-2, p.1).  Specifically, Kittilsen wrote that he felt he was "being forced" out of his job, noting "everytime [he] was sent home on medical leave it was against [his] will." (*Id*.)  He hoped there was no "discrimination based on [his] disability and/or perception of disability," but felt "like the real 'plan' is to terminate [him] because of [his] disability or perception of disability." (*Id*.).  The next day, Gexpro's Human Resources Director Laura McConnell responded with an offer letter for the inside sales position (Doc. 30-2, p. 2-3).  McConnell's response also reflected that she and Kittilsen had discussed the offer and the concerns raised in Kittilsen's email (*Id*.).  McConnell asked Kittilsen to contact her immediately if he had any remaining concerns (*Id*.).

In the inside sales position, Kittilsen worked alongside the program manager to ensure parts were in stock, order parts, and ensure the program was up-to-date (Doc 27, p. 8).  After several months, Schulze considered placing Kittilsen on a third Performance Improvement Plan because he was failing to accurately enter data and avoid order backlogs (Doc. 31, p. 2).  And, during the first week of May 2017, a co-worker complained about Kittilsen's behavior (Doc. 31, p. 3).  Gexpro suspended Kittilsen with pay for two days while it investigated the complaint (*Id*.).  Kittilsen denied any altercation occurred (Doc. 27, p. 9; Doc. 35-2, p. 42).

While on paid suspension, Kittilsen had a seizure that resulted in a concussion (Doc. 27, p. 9).  On May 11, 2017, Kittilsen visited a neurology clinic and was released to work without

restrictions on May 15, 2017 (Doc. 27, p. 9; Doc. 30-2, p. 4).  Upon his return, Gexpro delivered a written warning relating to the co-worker's complaint earlier in the month (Doc. 30-2, pp. 5-6). Kittilsen experienced another seizure that same day and additional seizures later in the week (Doc. 27, p. 10-11).  Gexpro asked Kittilsen to provide a doctor's evaluation of his ability to work and placed Kittilsen on leave beginning May 19, 2017 (Doc. 27, p. 11).

During 2017, Gexpro experienced a financial slowdown and, after the first quarter, considered options for spending cuts, including possible headcount reductions (Doc. 30-3, pp. 3-4).  As part of that process, Schulze ranked the Dallas branch inside sales employees in May 2017 (Doc. 31, p. 3).  Based on metrics of performance, flexibility, functional expertise/critical skills, and communications, Kittilsen's rank was the lowest (*Id.*).

Kittilsen continued to have seizures throughout the summer of 2017 (Doc. 28, p. 1).  He remained on leave from work and applied for and received short term disability benefits (Doc. 28, p. 2; Doc. 30-2, p. 7).  Also while on leave in June 2017, Kittilsen suggested that Gexpro allow him to work "largely" from home after his wife became unavailable to drive him to work (Doc. 28, p. 5; Doc. 31-3, p. 2).  Gexpro denied Kittilsen's request because "it did not allow any non-exempt employee to work from home fulltime, especially in the [i]nside [s]ales role which required regular in-person attendance" (Doc. 31-3, p. 2).  According to Amy Newman, a Human Resources Generalist filling in for McConnell at the time, Kittilsen refused Gexpro's suggestions regarding alternative transportation options (*Id.*).

Kittilsen filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC Charge) on June 30, 2017 (Doc. 30-2, p. 16-17).  The EEOC Charge alleged disability discrimination based on (1) the Second PIP, (2) his "demotion" to the inside sales

position, (3) his May 2017 suspension, and (4) the June 2017 denial of "reasonable accommodation to perform [his] job" (*Id*.).

Gexpro was unsuccessful in its attempts to find cost savings that would avoid a reduction in staff, and the Dallas branch had to make significant cuts (Doc. 31, p. 3; Doc. 31-2, p. 1). Schulze and McConnell determined the branch could go forward with one of its three inside sales representatives (Doc. 31, p. 3; Doc. 31-1, p. 2). To determine who to retain, Schulze and McConnell prepared another ranking in August 2017 (*Id*.). Again, Kittilsen ranked lowest in the inside sales group in each of the critical areas—performance, flexibility, functional expertise/critical skills, and communications (*Id*.).

In October 2017, Gexpro laid off seven individuals at various locations, including Kittilsen and another inside sales representative and a project manager at the Dallas branch (Doc. 31-1, p. 3). According to declarations by Schultze, McConnell, and Raymond Herzog, Gexpro Vice President of Sales and Marketing, neither Kittilsen's disability, request for accommodation, nor complaints of discrimination factored into Gexpro's decision to eliminate his position[2] (Doc. 31, p. 3; Doc. 31-1, p. 2, Doc. 31-2, p. 2). Gexpro offered severance packages to each of the individuals effected by the layoff (Doc. 31-1, p. 3). Kittilsen declined the package (*Id*.).

Kittilsen applied for long term disability benefits through MetLife in November 2017 (Doc. 29, p. 1-8). In his application, Kittilsen represented that he could not return to work until his seizure activity was under control (*Id*., p. 4). MetLife approved Kittilsen's application, and he has

---

[2] Kittilsen asserts "it is clear [Gexpro] was specifically incorporating the information regarding [his] seizures into the 'matrix' that selected him for layoffs" (Doc. 34, p. 8). As support, he cites the EEOC Charge "in conjunction with other documents" and Herzog's testimony that he (1) "assumed" Kittilsen's seizure disorder was discussed in determining who to select for layoff and (2) "it would make sense for the HR community because [Kittilsen's EEOC Charge] had happened to discuss it when they were going and looking at the forced ranking … and the potential reduction in force" (*Id*.). Herzog, however, was not part of those discussions about selections for layoffs, and his speculation regarding the discussions is not evidence that Kittilsen's seizure disorder was "incorporated" into the matrix.

received benefits since December 2017 (Doc. 26, pp. 2-3).  He also has applied for and received approval for Social Security disability benefits (*Id.*, p. 6).

Kittilsen brings this action against Gexpro pursuant to the Americans with Disabilities Act (ADA) and Chapter 21 of the Texas Labor Code (Chapter 21) (Doc 1).  He asserts causes of action for disability discrimination, disability harassment, failure to accommodate a disability, and failure to engage in the interactive process.  Although he does not include retaliation as a cause of action, elsewhere in his complaint he alleges generally that Gexpro retaliated against him for opposing/reporting discrimination and/or seeking accommodation.  Gexpro moves for summary judgment on each of Kittilsen's claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013).  A material fact is one that "might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Tagore*, 735 F.3d at 328 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court must consider all of the evidence in the light most favorable to the nonmoving party, draw reasonable inferences in favor of the nonmoving party, disregard evidence favorable to the movant that the jury would not be required to believe, and refuse to make credibility determinations or weigh the evidence.  *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013).

If the burden of proof on an issue falls on the nonmoving party, the movant must demonstrate "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir.

2010).  The burden then shifts to the nonmoving party to produce evidence showing the existence of a genuine issue of material fact for trial.  *Bayle*, 615 F.3d at 355; FED. R. CIV. P. 56(e).  To meet this burden, the nonmoving party must present specific facts indicating a genuine issue for trial. *Bayle*, 615 F.3d at 355. "[C]onclusory statements, speculation, and unsubstantiated assertions" are not specific facts and are not sufficient to defeat a motion for summary judgment.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

ANALYSIS

### 1.  Disability Discrimination

Gexpro moves for summary judgment on Kittilsen's disability discrimination cause of action, asserting (1) Kittilsen cannot establish a prima facie case because there is no evidence to show he was a "qualified individual" or was subject to an adverse employment action; (2) there is no evidence to show Gexpro's reason for terminating him was pretextual; and (3) with respect to his termination, he did not exhaust his administrative remedies.

Both the ADA and Chapter 21[3] prohibit an employer from discriminating against a qualified individual on the basis of disability.  42 U.S.C. § 12112(a); TEX. LAB. CODE. ANN. § 21.001, *et seq.*  To establish a discrimination claim, a plaintiff may present "direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)."  *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017).  In the absence of direct

---

[3] Kittilsen's Chapter 21 claims are based on the Texas Commission on Human Rights Act (TCHRA), which "parallels the language of the [ADA]." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020).  Accordingly, Texas courts follow ADA law in evaluating Chapter 21 discrimination claims, and this Court's ADA analysis also applies to Kittilsen's Chapter 21 claims. *Id.*; *Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018).  Additionally, the ADA is "part of the same broad remedial framework as … Title VII," and all anti-discriminatory acts are subject to similar analysis. *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 234 (5th Cir. 2001).

evidence, the plaintiff must establish he (1) has a disability or was regarded as disabled; (2) was qualified for the job; and (3) was subject to an adverse employment decision on account of the disability.  *Id.*

If a plaintiff establishes a *prima facie* case of discrimination, the "burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003) (citing *McDonnell Douglas*, 411 U.S. at 802.  If the employer satisfies its burden, the plaintiff must offer evidence to create a genuine issue of material fact either that the employer's reason (1) is untrue and is, instead, a pretext for discrimination, or (2) is true, but only one reason for its conduct and another motivating factor is the plaintiff's protected characteristic.  *E.E.O.C. v. LHC Group*, 773 F.3d 688, 702 (5th Cir. 2014).

## A.  *Direct Evidence*

Kittilsen first contends this case need not be analyzed under the *McDonnell Douglas* framework because Gexpro had admitted his disability was the basis for his demotion to the inside sales position.[4]  Specifically, Kittilsen asserts statements that Gexpro moved him to the inside sales role as an accommodation when he returned to work in January 2017 because it was "unable to wait any longer before filling the critical [p]rogram [m]anager role" are direct evidence that Gexpro discriminated against Kittilsen based on his disability.

Direct evidence, in this context, must be "evidence which, if believed, proves the fact without inference or presumption."  *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484, 488 (5th Cir. 2013).  "If an inference is required for the evidence to be probative as to [defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not

---

[4]  In response to Gexpro's summary judgment motion on his disability discrimination claim, Kittilsen addresses only his allegations of discrimination regarding his move from program manager to inside sales in January 2017.  Because he presents no summary judgment evidence or argument related to the other acts of discrimination alleged in his EEOC Charge, he appears to abandon those grounds with respect to his claim.

direct." *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp.2d 767, 776 (N.D. Tex. 2013) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002)).

Gexpro's statements are not direct evidence that it removed Kittilsen from the program manager position because of his seizure disorder. Instead, Gexpro indicated only that it did so because he had been unavailable through the majority of Fall 2016 to perform the job and Gexpro could not know when he might return. To construe the statement as evidence that he was removed from the position because of his disability requires an inference by a fact finder and, therefore, is not direct evidence of discrimination. *See e.g., Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019); *Cortez v. Raytheon Co.*, 663 F. Supp.2d 514, 521 (N.D. Tex. 2009) (employer's testimony that he terminated plaintiff when she failed to return to work upon the expiration of her unpaid medical leave was not direct evidence that the decision was discriminatory because the employer did not admit directly that his decision was made because of Cortez's disability). Finding no direct evidence of discrimination, the Court must a determine whether Kittilsen has presented evidence to support a prima facie case of disability discrimination under the *McDonnell Douglas* framework.

B.  *Qualified Individual*

Gexpro first asserts Kittilsen cannot establish that he was a qualified individual because, due to his extended medical leave, he was unable to perform his job. To be a "qualified individual," a plaintiff must be able to perform the essential functions of the job in spite of his disability or with an identified reasonable accommodation of his disability. *Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 766 (5th Cir. 2019). The Fifth Circuit has recognized the ability to attend work and complete assigned tasks on a regular basis is an essential function of one's job. *See, e.g., Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir. 1996); *see*

*also Green v. Medco Health Solutions of Tex.*, LLC, 947 F. Supp.2d 712, 721–22 (N.D. Tex. 2013), *aff'd*, 560 F. App'x 398 (5th Cir. 2014); *Martinez v. Lennox Int'l, Inc.*, No. 3:96-CV-0702-G, 1997 WL 209306, at *3 (N.D. Tex. Apr. 18, 1997).  In this case, Kittilsen was on medical leave, and unavailable to work in the project manager role, for all but a few days between August 16, 2016 and January 15, 2017.

 Kittilsen, however, asserts he "could perform the essential functions of his job with reasonable accommodation" because "performing the program manager job from home would not have been a difficult adjustment."  As evidence, he points to the fact that he was allowed to work from home when necessary when he first experienced seizures in Spring 2016 and did so successfully.  Thereafter, he was "forced" to take medical leave "though he did not ask for it or wish to take it."

It appears that, as of Summer 2016, Gexpro allowed Kittilsen to work from home on days when he also had to attend medical appointments (Doc. 35-1, p. 76).  And, his 2016 performance evaluation shows he was "meeting expectations" during the first half of 2016 (Doc. 25-1, pp. 60-64).  The evaluation, however, clarifies that Kittilsen was "able to meet or exceed plan *while he was available*" and "helped maintain sales in the first half of the year *but was not able to finish out the year due to medcal challenges*" (*Id.*) (emphasis added).

The summary judgment evidence also shows that Gexpro initiated Kittilsen's medical leaves beginning August 15, 2016 and October 31, 2016, requesting that his medical providers advise as to whether he could perform his work safely before he returned to work.[5]  And, there are some doctor letters releasing Kittilsen back to work during this period.  Kittilsen directs the Court to one of these letters, written by Hays in November 28, 2016, stating that Kittilsen "should be

---

[5] Kittilsen acknowledged in his June 2017 email that there were "safety concerns" with respect to his seizure disorder (Doc. 30-2, p. 1).

able to return to work by Dec 12, 2016 with sensible seizure precautions …." (Doc. 35-1, pp. 89-90).  The record, however, contains a number of additional doctor letters requesting that Kittilsen remain out of work and/or extending periods of leave due to continuing seizures.  Indeed, Kittilsen requested that his leave be extended past the December 12, 2016 release date noted in Hays's letter and he did not return until the middle of January 2017.

The fact that Kittilsen may have been able to perform some of the essential functions of the program manager job from home when he was on the job does not change the fact that he was unable to work all but a few days between August 16, 2016 and January 16, 2017.  Because Kittilsen could not work during this period, he was not a "qualified individual with a disability" for purposes of the project manager position.  *See, e.g., Rogers*, 87 F.3d at 759 ("[a]n essential element of any ... job is an ability to appear for work ... and to complete assigned tasks within a reasonable period of time"); *Martinez*, 1997 WL 209306, at *4.  Accordingly, the Court finds Kittilsen, with or without reasonable accommodations, could not perform the essential functions of his job when he was removed from the project manager position and, thus, was not a qualified individual.

### C. *Adverse Employment Action*

Gexpro contends Kittilsen cannot establish a prima facie case of disability discrimination because moving Kittilsen from program manager to inside sales simply removed some of Kittilsen's job duties without a reduction in pay and did not constitute an adverse employment action or demotion.[6]  Kittilsen disagrees, pointing to evidence that, although his salary remained

---

[6] Gexpro also asserted Kittilsen cannot establish either the Second PIP or his May 2017 suspension were adverse employment actions.  Kittilsen's response, as noted previously, addresses only his alleged demotion.  In any event, the Fifth Circuit has determined that placement on a performance improvement plan is not an ultimate employment decision that can form the basis of a disparate treatment claim.  *See, e.g., Turner v. Novartis Pharm. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011).  Nor is receiving a short, paid suspension.  *See, e.g., Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017) (two-day suspension from work that exacted no "physical, emotional, or economic toll" did not qualify as an adverse employment action).  Accordingly, the Court finds, and Kittilsen does not dispute, that the

the same, he was no longer entitled to program manager performance bonuses, which represented a "loss of almost $10,000 per year."

For disability discrimination, only ultimate employment decisions such as "hiring, granting leave, discharging, promoting, or compensating" are actionable. *Turner*, 442 F. App'x 140–41. To show a demotion, Kittilsen cites the Court to (1) a statement in his affidavit that he "provided the evidence that [he] far surpassed quota each quarter to the point that [he] had capped out the maximum amount of bonus pay that [he] could receive" and (2) a chart titled "2016 Program Manager Commission Calculation" showing he received commission payments for the first two quarters of 2016 (Doc. 35-1, p. 93; Doc. 35-2, p. 46). But neither document is evidence that he would not be eligible for commission payments or that he would lose "almost $10,000 per year" in inside sales. His inside sales offer letter states that he was eligible to participate in a commission plan (Doc. No. 30-2, p.3). And, there is no summary judgment evidence to show that he would receive any less of an annual commission, or bonus, in that position. Because Kittilsen presents no evidence to show that there would be a significant, or any, difference in the commissions he received before and after the change in position, he cannot establish he suffered an adverse employment action. *See, e.g., Maestas v. Apple, Inc.*, No. A-11-CV-852-LY, 2012 WL 12897395, at *4 (W.D. Tex. Nov. 14, 2012), *aff'd*, 546 F. App'x 422 (5th Cir. 2013) ("Maestas must put forth some evidence other than his speculation about his loss of commissions to establish that his new position was a demotion").

D. *Discriminatory Termination*

Finally, Gexpro asserts it is entitled to summary judgment on Kittilsen's discriminatory termination claim because he failed to exhaust his administrative remedies with respect to the

---

Second PIP and suspension  do not constitute adverse employment actions.

claim.  Under both the ADA and Chapter 21, a Texas plaintiff must exhaust his administrative remedies by filing a charge with the EEOC or the Texas Workforce Commission.  *Williams v. Tarrant County Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018).  A plaintiff properly raises his claims in federal court only when "they are within the scope of the ... investigation which can reasonably be expected to grow out of the [administrative] charge of discrimination."  *Id*.  "Termination is a discrete event for which a claimant must file a supplemental charge or amend the original EEOC charge."  *See Phillips v. Caris Life Scis., Inc*., 715 F. App'x 365, 369 (5th Cir. 2017); *Simmons-Myers v. Caesars Entertainment Corp.*, 515 F. App'x 269, 273 (5th Cir. 2011).  Because Kittilsen did not amend his EEOC Charge, file a new charge, or otherwise apprise the EEOC of his belief that his termination was discriminatory, the Court finds, and Kittilsen does not dispute,[7] that he did not exhaust his administrative remedies and Gexpro is entitled to summary judgment on the claim.

Because there is no evidence that Kittilsen was a qualified individual or suffered an adverse employment action, the Court finds Gexpro is entitled to summary judgment on his disability discrimination cause of action arising from the Second PIP, the alleged demotion, and the suspension.  Gexpro also is entitled to summary judgment on Kittilsen's discriminatory termination cause of action because he failed to exhaust his administrative remedies.

## 2.  *Reasonable Accommodation and Engaging in Interactive Process*

Gexpro next asserts Kittilsen's claims for failure to accommodate his disability and engage in the interactive process[8] also fail as a matter of law because he was not a qualified individual and Gexpro provided every reasonable accommodation that he requested.

---

[7]  Kittilsen asserts for the first time in his summary judgment response that he does not contend his termination was a result of discrimination (Doc. 34, p. 16).

[8]  The Court considers these claims together.  *See Griffin v. UPS, Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) ("[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate

Discrimination under the ADA includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see also* TEX. LAB. CODE ANN. § 21.128(a) (making it unlawful for an employer to fail to make a reasonable workplace accommodation for a qualified individual with a disability). To prevail on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by his employer; and (3) the employer failed to make reasonable accommodations for the limitations. *Feist*, 730 F.3d at 452. "Reasonable accommodations" include reasonable modifications or adjustments that would enable the employee to perform the essential functions of his current job, job restructuring, part-time or modified work schedules, and reassignment to a vacant position. 42 U.S.C. § 12111(9)(B). "[O]nce the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that together they can determine what reasonable accommodations might be available." *Clark*, 952 F.3d at 588 n.73 (citation omitted).

In June 2017, Kittilsen suggested an accommodation allowing him to work "largely" from home (Doc. 28, p. 5). His wife recently had returned to work and would be unavailable to drive him to work (Id.). Gexpro denied his request to work from home because it did not allow non-exempt employees to work from home on a regular basis and the inside sales position was not a job that could be done at home and required regular in-person attendance (Doc. 31-3, p. 2). Gexpro offered to explore other methods of transportation with Kittilsen, and he testified to conversations

---

an employee, the employer violates the ADA."); *see also Clark*, 952 F.3d at 588.

with Gexpro regarding alternative transportation, including Uber, other car services, and public transportation (*Id.*; Doc. 28, p. 5).  Kittilsen refused Gexpro's suggestions (Doc. 31-3, p. 2).

At the time, Kittilsen had been on leave since May 22, 2017, and he remained on leave, continuing to have seizures throughout the summer.  (Doc. 28, p. 1).  As a result, he was not a qualified individual at the time he requested the accommodation.  *See Amsel v. Texas Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012); *Cortez*, 664 F. Supp.2d 522 (plaintiff who could not attend work was not a "qualified individual with a disability"); *Fuentes v. Krypton Solutions, LLC*, No. 4:11-cv-581, 2013 WL 1391113, at *4 (E.D. Tex. Apr. 4, 2013) (because plaintiff "was unable to come to work at the time of the adverse employment action," he could not perform an essential function of his job).

Even if Kittilsen were a qualified individual, the Fifth Circuit has recognized that regular attendance at work is "an essential function of most jobs."  *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726–27 (5th Cir. 1998) ("Team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance."); *Amsel*, 464 F. App'x at 400 (recognizing "necessity of in-office time for purposes of customer service and team work").  Although he testified he could perform the inside sales job, "at least in part, at home with a v chip, a laptop and a cell phone" (Doc. 34, p. 15), Kittilsen's subjective judgment on the matter is insufficient to raise a genuine dispute of material fact that such an accommodation is reasonable.  *See Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 793–95 (5th Cir. 2017) (employee's testimony that there were no problems resulting from her working at home and her supervisors were satisfied with her work did not create genuine dispute of fact to preclude summary judgment).  Further, Kittilsen's inside sales position required him to work alongside the program manager to make sure parts were in stock, order parts, and ensure the program was up-

to-date (Doc. 27, p. 8).  The summary judgment evidence shows his position involved teamwork and he relied on co-workers for help  (Doc. 31, pp. 2, 5).  Further, Kittilsen's performance was an ongoing concern, and his working from home could hinder Gexpro's supervision and evaluation of his work.  *See Hypes*, 134 F.3d at 736–27.

Under the summary judgment evidence presented, the Court finds Kittilsen fails to raise a genuine dispute of material fact as to whether (1) he is a qualified individual or (2) Gexpro failed to make a reasonable accommodation.  Accordingly, Gexpro is entitled to summary judgment on his causes of action for failure to make a reasonable accommodation and engage in the interactive process.

### 3.  *Disability Harassment*

Gexpro asserts Kittilsen's claims for disability harassment fails as a matter of law because the allegedly harassing conduct was not sufficiently pervasive or severe to alter the conditions of his employment and create an abusive working environment.  Kittilsen does not respond to Gexpro's summary judgment motion with respect to the harassment claim.

To prevail on his claim of disability-based harassment, Kittilsen must prove: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his disability or disabilities; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt, remedial action.  *Molden v. E. Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 316 (5th Cir. 2017).  "Moreover, the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'"  *Id*. (quoting *Flowers*, 247 F.3d at 235–36).

The only evidence to show Kittilsen was subjected to actionable harassment is his testimony that he was demoted, received the Second PIP, and his first supervisor, Ben Goff, told him to go have his seizures "somewhere else" and "would give [him] the finger … oftentimes" (Doc. 28, p. 9).  To determine whether evidence raises harassment, a court considers "the frequency of the discriminatory conduct, the severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."  *Flowers*, 237 F.3d at 236–36.  Considering the relevant factors, the Court finds, and Kittilsen does not dispute, that the conduct identified by Kittilsen does not rise to the level of actionable conduct for disability harassment.  Accordingly, Gexpro is entitled to summary judgment on Kittilsen's disability harassment cause of action.

### 4.  Retaliation

Although Kittilsen did not identify retaliation[9] as a cause of action in his complaint, Gexpro moves for summary judgment in an abundance of caution because Kittilsen's complaint generally alleges that Gexpro retaliated against him for opposing/reporting discrimination and/or seeking accommodation.  Gexpro asserts Kittilsen failed to exhaust his administrative remedies with regard to any retaliation claim.

Kittilsen filed his EEOC Charge on June 30, 2017, alleging disability discrimination.  The EEOC Charge does not allege retaliation specifically or any facts to show retaliation as a result of his January 2017 email or on any other basis.  Retaliation claims are distinct from discrimination claims.  *Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 374 (5th Cir. 2013).  Interpreting the EEOC Charge broadly according to the scope of the investigation that could reasonably be

---

[9]  Kittilsen must establish three elements to make a prima facie case of retaliation: (1) he engaged in an activity protected by the statute; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action.  *Feist*, 730 F.3d at 454.

expected to grow out of it, the Court finds such an investigation would not include a claim of retaliation.

Kittilsen, however, asserts he has a retaliation claim because his termination was a result of retaliation for filing his EEOC Charge and there is no exhaustion requirement for the claim pursuant to *Gupta v. East Texas State Univ.,* 654 F.2d 411 (5th Cir. 1981).  In *Gupta*, the Fifth Circuit held "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge."  *Id*. at 414.  The *Gupta* exception, however, does not apply when a plaintiff alleges that the same adverse employment action was the result of both discrimination and retaliation.  *Simmons-Myers*, 515 F. App'x at 273–74; *Sapp v. Potter*, 413 F. App'x 750, 752–53 (5th Cir. 2011).

Kittilsen's complaint alleges he was terminated and replaced by a person who did not have a disability and/or perceived disability and Gexpro "discriminated against [him] based upon his disability … and retaliated against him for opposing/reporting discrimination and/or seeking accommodation" (Doc. 1).  During his deposition, Kittilsen testified that Gexpro eliminated his position in 2017 because he had a disability (Doc.  28, p. 8-9).  Kittilsen also attributes his termination to his January 2017 email and testified that, with respect to the EEOC Charge, he "would imagine it was all related" (*Id*., p. 11).

To the extent Kittilsen wants the Court to read his complaint to assert a claim that Gexpro terminated him in retaliation for his EEOC Charge, the complaint also can be read to assert a claim for discriminatory termination.   And, when asked about his allegations during his deposition, Kittilsen attributed his termination to both discrimination and retaliation.  Although Kittilsen now asserts—in response to Gexpro's summary judgment motion showing he failed to exhaust his administrative remedies—that he "does not contend his termination was a result of

20

'discrimination,'" he has never sought leave to clarify the claims in his complaint.  Because he alleges both discrimination and retaliation arising out of his termination, the *Gupta* exception does not apply and Kittilsen's termination was a separate employment event for which he was required to, but did not, file a new, amended, or supplemental charge before commencing this action.  *See Simmons-Myers*, 515 F. App'x at 273.  Accordingly, Kittilsen failed to exhaust his administrative remedies and Gexpro is entitled to summary judgment on his retaliatory termination claim.

## CONCLUSION

For the foregoing reasons, Gexpro's Motion for Summary Judgment (Doc. 23) is **GRANTED**. Kittilsen's causes of action against Gexpro are **DISMISSED with prejudice**.  The Court will enter a final judgment consistent with this order.

**SO ORDERED**; signed August 19, 2020.


ADA BROWN
UNITED STATES DISTRICT JUDGE

21